FILED
CLERK, U.S. DISTRICT COURT

8/16/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: ___JB___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 2:22-cr-00370-JFW |
| Plaintiff, | I N F O R M A T I O N |
| v. | [18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| RAMIRO DA ROSA MENDES, | |
| Defendant. | |

The Acting United States Attorney charges:

[18 U.S.C. § 1343]

A.  INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

Defendant and the Relevant Entities

1.  Defendant RAMIRO DA ROSA MENDES was a resident of Beverly Hills, California.

2.  Defendant MENDES claimed to be the owner of numerous businesses located in Beverly Hills, California, including: One Wilshire Enterprises; Professional Music Services; Synchrony Enterprises; and MB Property Management Group, LLC.

3.  Defendant MENDES claimed to be the owner of purported real estate services businesses named Ramiro Mendes Real Estate Services,

Real Estate Services, and Real Estate Invesst-ments, purportedly located in Beverly Hills, California, and Brockton, Massachusetts.

4.   Defendant MENDES was also the owner of Ramiro Mendes, LLC, and Quantum World, LLC, both of which were businesses registered in the State of Wyoming with registered business addresses in Cheyenne, Wyoming.

5.   Defendant MENDES was also the owner of La Peer Multimedia, Inc., a California company with a registered business address in Beverly Hills, California.

6.   Defendant MENDES controlled a bank account held in defendant MENDES's own name maintained at JP Morgan Chase Bank ending in 9823 (the "Chase 9823 Account").

<u>The Paycheck Protection Program</u>

7.   The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 that was designed to provide emergency financial assistance to Americans suffering economic harm as a result of the COVID-19 pandemic.  One form of assistance provided by the CARES Act was the authorization of United States taxpayer funds in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

8.   In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business.  The PPP loan application required the small business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  One such certification required the applicant to affirm that "[t]he [PPP

loan] funds w[ould] be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments." The applicant (through its authorized representative) was also required to acknowledge that "I understand that if the funds are used for unauthorized purposes, the federal government may pursue criminal fraud charges." In the PPP loan application, the applicant was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, the applicant was required to provide documentation showing its payroll expenses.

9. A business's PPP loan application was received and processed, in the first instance, by a participating financial institution. If a PPP loan application was approved, the participating financial institution would fund the PPP loan using its own monies.

10. PPP loan proceeds were required to be used by the business on certain permissible expenses, namely, payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expenses within a designated period of time and used at least a minimum amount of the PPP loan proceeds towards payroll expenses.

<u>The Economic Injury Disaster Loan Program</u>

11. The Economic Injury Disaster Loan Program ("EIDL") was a United States Small Business Administration ("SBA") program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

12. The CARES Act authorized the SBA to provide EIDL loans of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

13. To obtain an EIDL loan, a qualifying business was required to submit an application to the SBA and provide information about the business's operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDL loans for COVID-19 relief, the 12-month period was the 12-month period from January 31, 2019, to January 31, 2020. The applicant was also required to certify that all of the information in the application was true and correct to the best of the applicant's knowledge.

14. EIDL loan applications were submitted directly to the SBA and processed by the agency with support from a government contractor. The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods sold. Any funds issued under an EIDL loan were issued directly by the SBA.

15. EIDL loan funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments. If the applicant also obtained a loan under the PPP, the EIDL loan funds could not be used for the same purpose as the PPP loan funds.

### SBA-Approved PPP Service Providers and Lenders

16. Bank A was a federally insured financial institution based in Florida. Bank A participated in the SBA's PPP as an SBA-approved PPP lender. Small businesses seeking PPP loans could apply to Bank A

for PPP loans.  Bank A would review the loan applications and, if the application was approved for funding, Bank A would disburse the loan funds to the applicant.

B. **SCHEME TO DEFRAUD**

17. Beginning in or around April 2020 and continuing through in or around August 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendant MENDES, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud the SBA and SBA-approved lenders as to material matters, and to obtain money from the SBA and such lenders by means of materially false and fraudulent pretenses, representations, and promises.

18. The fraudulent scheme operated and was carried out, in substance, as follows:

    a. Defendant MENDES made and caused to be made, false statements to the SBA, financial institutions, and other lenders in connection with the fraudulent applications for PPP and EIDL loans, including false representations regarding the number of employees to whom the companies had paid wages, the average monthly payroll, the gross receipts earned by the purported businesses, and false certifications that the loans would be used for permissible business purposes.

    b. Defendant MENDES electronically submitted, and caused to be submitted, false and fictitious documents to the SBA and financial institutions in support of the fraudulent PPP and EIDL loan applications, including false tax documents.

    c. In each of the PPP and for the funded EIDL applications submitted by defendant MENDES, he certified that, as the

authorized representative of the businesses on whose behalf the applications were submitted, he knew and understood the terms and rules of the PPP and EIDL programs, and that the funds were to be used by the recipient to only pay certain authorized business expenses.

        d.    Defendant MENDES knowingly misappropriated and misused the PPP and EIDL loan proceeds for his own personal benefit, including for expenses prohibited under the requirements of the PPP and EIDL programs, such as the purchase of cryptocurrency for personal use and investment.

        e.    From in or around April 2020 and continuing through in or around August 2020, in furtherance of his scheme, defendant MENDES submitted and caused to be submitted fraudulent PPP and EIDL loan applications seeking approximately $6,708,963.33, and actually received $2,228,302.65 in PPP and EIDL proceeds to which he was not entitled.

C.    <u>USE OF AN INTERSTATE WIRE</u>

    19.  On or about June 29, 2020, in Los Angeles County, within the Central District of California, and elsewhere, for the purpose of executing the above-described scheme to defraud, namely, the misappropriation and misuse of the PPP loan proceeds fraudulently obtained for One Wilshire, defendant MENDES caused others to transmit, by means of wire communications in interstate commerce, approximately $793,300 in PPP loan proceeds from Bank A into the Chase 9823 Account.

FORFEITURE ALLEGATION

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), in the event of defendant RAMIRO DA ROSA MENDES's conviction of the offense set forth in the sole count of this Information.

2. Defendant MENDES, if so convicted, shall forfeit to the United States of America the following:

    a. All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offense; and

    b. To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendant MENDES, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of defendant MENDES, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//
//

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

STEPHANIE S. CHRISTENSEN
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

LORINDA I. LARYEA
Acting Chief, Fraud Section
Criminal Division
United States Department of Justice

SCOTT PAETTY
Assistant United States Attorney
Deputy Chief, Major Frauds Section

JENNIFER BILINKAS
Trial Attorney, Fraud Section
Criminal Division
United States Department of Justice